UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
TAMPA DIVISION

UNITED STATES OF AMERICA

v.

MOHAMAD JIHAD FAKIH

CASE NO. 8:25-cr-296-VMC-CPT

18 U.S.C. § 1349 (Conspiracy to Commit Wire Fraud)
18 U.S.C. § 553 (Attempt to Export Stolen Motor Vehicle)

## INFORMATION

The United States Attorney charges:

JUN 17 2025 PM 2:54
FILED - USDC - FLMD - TPA

### COUNT 1
(Conspiracy to Commit Wire Fraud)

**A. Introduction**

At all times material to this Information:

1. MOHAMAD JIHAD FAKIH ("FAKIH") was a naturalized United States citizen residing in the Middle District of Florida.

2. Interstate Auto Traders, Inc. ("Interstate Auto") was a car dealership located in Tampa, Florida.

3. Unnamed Coconspirator 1 was a United States citizen residing in the Middle District of Florida.

4. Victim Company 1 was an automotive financing company headquartered in Los Angeles, California.

5. Victim Company 2 was a federally insured and chartered credit union headquartered in Vienna, Virginia.

### B. The Conspiracy

6. Beginning in or around November of 2024, and continuing through in or around February of 2025, in the Middle District of Florida, and elsewhere, the defendant,

**MOHAMAD JIHAD FAKIH,**

did knowingly and willfully combine, conspire, and agree with other persons, known and unknown, to devise a scheme and artifice to defraud, and for obtaining money and property by means of false and fraudulent pretenses, representations, and promises that related to material facts, and, for the purpose of executing such scheme and artifice, to transmit and cause to be transmitted by means of wire communications in interstate and foreign commerce, any writings, signs, signals, pictures, and sounds, in violation of 18 U.S.C. § 1343.

### C. Manner and Means

7. The manner and means by which the coconspirators sought to accomplish the objects of the conspiracy included, among others:

    a. It was part of the conspiracy that FAKIH and Unnamed Coconspirator 1 would and did identify individuals to act as straw purchasers of automobiles from Interstate Auto;

    b. It was further part of the conspiracy that FAKIH and Unnamed Coconspirator 1 would and did direct the straw purchasers to provide false information about, among other things, monthly income, on an online automobile financing application through Interstate Auto;

  c. It was further part of the conspiracy that FAKIH and coconspirators would and did cause to be created false identification documents for the straw purchasers;

  d. It was further part of the conspiracy that Fakih and coconspirators would and did obtain fraudulent car titles to support the straw purchasers' financing applications;

  e. It was further part of the conspiracy that FAKIH, doing business as Interstate Auto, would and did cause to be submitted falsely prepared automobile loan applications to Victim Company 1;

  f. It was further part of the conspiracy that FAKIH would and did cause the straw purchasers to obtain promissory notes from Victim Company 2 to pay for automobiles from Interstate Auto;

  g. It was further part of the conspiracy that FAKIH and coconspirators would and did cause to be disbursed loans from Victim Company 1 and Victim Company 2 to pay for the straw purchasers' automobiles;

  h. It was further part of the conspiracy that FAKIH would and did cause to be deposited the fraudulently obtained automobile financing loans into bank accounts accessible to FAKIH;

  i. It was further part of the conspiracy that FAKIH would and did pay coconspirators and straw purchasers a portion of the automobile loan proceeds;

  j. It was further part of the conspiracy that FAKIH and coconspirators purported to sell vehicles to straw purchasers that had liens;

k. It was further part of the conspiracy that FAKIH and coconspirators would and did export and attempt to export vehicles obtained as part of this scheme, including those for which the victim companies held liens or were otherwise stolen;

l. It was further part of the conspiracy that FAKIH and coconspirators would and did fraudulently report the straw purchasers' automobiles as stolen to insurance companies in order to obtain loss proceeds;

m. It was further part of the conspiracy that FAKIH, coconspirators, and straw purchasers would and did communicate via text messages and voice calls;

n. It was further part of the conspiracy that coconspirators would and did employ various techniques to protect their anonymity and to thwart detection of their activities by government and law-enforcement agencies; and

o. It was further part of the conspiracy that coconspirators would and did perform acts and make statements to misrepresent, hide, and conceal, and cause to be misrepresented, hidden, and concealed, the purpose of the conspiracy and the acts committed in furtherance thereof.

All in violation of 18 U.S.C. § 1349.

## COUNT 2
(Attempt to Export Stolen Motor Vehicle)

On or about April 4, 2024, in the Middle District of Florida, and elsewhere, the defendant,

**MOHAMAD JIHAD FAKIH,**

aided and abetted by others, did knowingly attempt to export a motor vehicle, that is, a 2022 Rolls-Royce Cullinan VIN: SLATV4C08NU209947, knowing the same to have been stolen, in violation of 18 U.S.C. § 553(a).

## FORFEITURE

1. The allegations contained in Counts One and Two are incorporated by reference for the purpose of alleging forfeiture pursuant to 18 U.S.C. §§ 981(a)(1)(C), 982(a)(5), and 28 U.S.C. § 2461(c).

2. Upon conviction of a violation of 18 U.S.C § 1343, or a conspiracy to violate section 1343 (18 U.S.C. § 1349), the defendant shall forfeit to the United States, pursuant to 18 U.S.C. § 981(a)(1)(C) and 28 U.S.C. § 2461(c), any property constituting, or derived from, proceeds obtained directly or indirectly, as a result of such violation.

3. Upon a conviction of a violation of 18 U.S.C. § 553, the defendant shall forfeit to the United States, pursuant to 18 U.S.C. § 982(a)(5), any property, real or personal, which represents or is traceable to the gross proceeds obtained, directly or indirectly, as a result of such violation.

4. The property to be forfeited includes, but is not limited to, the

following: an order of forfeiture in the amount of at least $373,000, which represents the proceeds the defendant obtained from the offenses.

5. If any of the property described above, as a result of any act or omission of the defendant:

    a. cannot be located upon the exercise of due diligence;

    b. has been transferred or sold to, or deposited with, a third party;

    c. has been placed beyond the jurisdiction of the Court;

    d. has been substantially diminished in value; or

    e. has been commingled with other property which cannot be divided without difficulty,

the United States shall be entitled to forfeiture of substitute property under the provisions of 21 U.S.C § 853(p), as incorporated by 18 U.S.C § 982(b)(1) and 28 U.S.C. § 2461(c).

GREGORY W. KEHOE
United States Attorney

By: _____
Risha Asokan
Assistant United States Attorney

By: _____
Daniel J. Marcet
Assistant United States Attorney
Chief, National Security Section